Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL (VI)

| | | |
|---|---|---|
| JUAN M. APONTE CASTRO<br><br>Recurrido<br><br>v.<br><br>GABRIEL TORO CURET<br><br>Peticionario | KLCE202400723 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Municipal de Cabo Rojo<br><br>Caso núm.: OLA2024-60<br><br>Sobre: Ley núm. 284-1999, Ley Contra el Acecho en Puerto Rico, según enmendada por la Ley núm. 44-2016 |

Panel integrado por su presidenta la jueza Ortiz Flores, el juez Rivera Torres, la jueza Rivera Pérez y el juez Campos Pérez.

**Rivera Torres, Juez Ponente**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 20 de agosto de 2024.

Comparece ante este tribunal apelativo, el Sr. Gabriel Toro Curet (el señor Toro Curet o el peticionario) mediante el recurso de *certiorari* del epígrafe solicitándonos que revoquemos la *Orden de Protección* emitida por el Tribunal de Primera Instancia, Sala Municipal de Cabo Rojo (TPI), el 12 de junio de 2024, notificada el mismo día, a favor del Sr. Juan M. Aponte Castro (señor Aponte Castro o el recurrido) al amparo de la *Ley contra el Acecho en Puerto Rico, infra.*

Por los fundamentos que expondremos a continuación, denegamos la expedición del auto de *certiorari* solicitado.

### I.

Surge del recurso que, el 7 de mayo de 2024, el señor Aponte Castro instó una *Petición de Orden de Protección al Amparo de la Ley Contra el Acecho en Puerto Rico* en contra del peticionario. En

esta alegó que el señor Toro Curet es la pareja de su ex exposa con quien terminó la relación hace aproximadamente tres (3) años. Expuso que el peticionario, desde hace dos (2) años, comenzó a trabajar en la farmacia que está ubicada al lado de su oficina y desde ese momento "me acecha, hostiga y provoca."[1] Arguyó, además, que los eventos de acecho y hostigamiento "son más de 20", siendo los "últimos y más serios los siguientes":[2]

> 6/mayo/24- llegué a mi carro al salir de trabajar como a las 4:30 y estaba dentro del Jeep esperando que yo llegara a mi carro, al llegar baj[ó] el cristal y me dijo "si era macho que le gritara de frente", lo que repitió en varias ocasiones. No le hice caso y me fui en mi carro.
> 2/mayo/24-cuando salí de trabajar como a las 4:00 estaba parado frente a mi oficina fumando y me gritó algo que no entendí. No le hice caso y seguí hacia mi carro.
> 4/abril/23- Estaba saliendo del Tribunal de CR y él pasó en el carro de su trabajo y me gritó cabrón.
> 16/marzo/23- Iba caminando a almorzar y pasó en el carro del trabajo y me sacó el dedo.

A tenor de dichas alegaciones, el mismo día, el foro recurrido emitió una *Orden de Protección Ex Parte al Amparo de la Ley Contra el Acecho en Puerto Rico* con vigencia hasta el 29 de mayo de 2024. Ello, al entender que lo declarado por el señor Aponte Castro establece un patrón de acecho del peticionario hacia el primero "consistente en que constantemente le dice palabras soeces, le grita, le saca el dedo del medio."[3] Asimismo, ordenó al señor Toro Curet a entregar el arma de fuego y la licencia de armas a la Policía de Puerto Rico. También, señaló la vista final para el 29 de mayo.

Llegado el día de la referida vista, comparecieron el señor Aponte Castro, por derecho propio, y el peticionario con su representación legal, Lcdo. Víctor Manuel Souffront Cordero. Así, aquilatada la prueba testifical y documental el TPI emitió la *Orden*

---

[1] Véase, Apéndice del Recurso, a la pág. 3.
[2] *Íd.*
[3] *Íd.*, a la pág. 7.

*de Protección* objetada en la que consignó como determinaciones de hechos que:[4]

> Surge de lo declarado que el peticionado [peticionario] es la actual pareja de la ex-esposa del peticionario [recurrido] y labora en una farmacia justo al lado de la oficina del peticionario. El peticionado ha incurrido en un patrón de acecho en contra del peticionario consistente en que cuando se lo encuentra le grita palabras soeces, le saca el dedo del medio, lo observa desde el otro lado de la acera de su oficina. Algunos de estos eventos ocurrieron el 2 de mayo de 2024 (le gritó algo que el peticionario no entendió), el 6 de mayo de 2024 (le dijo si eres macho dímelo de frente), el 4 de abril de 2023 (le gritó cabrón) y en marzo de 2023 (le sacó el dedo del medio). El peticionario teme por su seguridad ya que se lo encuentra constantemente por su área de trabajo.

En virtud de ello, el foro *a quo* dictó varias órdenes en contra del señor Toro Curet y decretó la vigencia de la *Orden de Protección* por un (1) año, hasta el 12 de junio de 2025.

Inconforme con el dictamen, el peticionario acude ante esta *Curia* mediante el recurso de *certiorari* de epígrafe imputándole al foro primario haber incurrido en los siguientes errores:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, SALA DE *sic* MUNICIPAL DE CABO ROJO AL EXPEDIR Y DECLARAR HA LUGAR LA ORDEN DE PROTECCIÓN OLA2024-00-60 AL AMPARO DE LA LEY 284-1999 SOLICITADA POR LA PARTE PETICIONARIAS A PESAR [DE] <u>NO EXISTIR</u> TODOS LOS ELEMENTOS NECESARIOS PARA LA EXPEDICIÓN DE ESTA.
>
> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, SALA MUNICIPAL DE [CABO ROJO] AL EXPEDIR LA ORDEN DE PROTECCIÓN EN CLARA VIOLACIÓN DE LAS GARANTÍAS MÍNIMAS DEL DEBIDO PROCESO DE LEY, TODA VEZ QUE LA VISTA FINAL FUE PRE[SI]DIDA POR LA MISMA JUEZ QUE HABÍA ATENDIDO LA VISTA EX PARTE Y LIMITÓ DE MANERA IRRAZONABLE EL DERECHO DEL PETICIONARIO DE CONFRONTARSE CON LA PRUEBA.

El 9 de julio de 2024, emitimos una *Resolución* concediéndole a la parte recurrida el término de diez (10) días para expresarse. Luego de varios tramites procesales, el 8 de agosto de 2024, la parte recurrida cumplió con lo ordenado en nuestra

---

[4] *Íd.*, a la pág. 14.

Resolución del 7 de agosto, por lo que nos damos por cumplidos y a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes y el expediente apelativo, y escuchada la vista del 29 de mayo de 2024; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

**Auto de *certiorari***

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *IG Builders at al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró,* 165 DPR 324, 334-335 (2005); *Negrón v. Srio. de Justicia*, 154 DPR 79, 90-92 (2001). Esta discreción ha sido definida en nuestro ordenamiento jurídico como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. No significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso constituiría un abuso de discreción. *Negrón v. Srio. de Justicia, supra*, pág. 91.

Por consiguiente, para determinar si procede la expedición de un recurso de *certiorari,* en el que se recurre de una resolución interlocutoria, debemos acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, que lee como sigue:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari*:
>
> A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales

deberán ser elevados, o de alegatos más elaborados.
E)   Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F)   Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G)   Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Los criterios antes transcritos nos sirven de guía para, de manera sabia y prudente, tomar la determinación de si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). De no encontrarse presente alguno de los criterios anteriormente enumerados en un caso que se nos presenta, no procede nuestra intervención. Así pues, es norma reiterada que este foro intermedio no habrá de intervenir con el ejercicio de la discreción del Tribunal de Primera Instancia, "salvo que se demuestre que hubo un craso abuso de discreción, prejuicio, error manifiesto o parcialidad." *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012), citando a *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986).

Por su parte, en nuestro ordenamiento jurídico, la discreción ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. Lo anterior no significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso constituiría un uso excesivo de discreción. *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009); *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001).

### *Ley contra el Acecho de Puerto Rico*

La Ley núm. 284-1999 se creó con el fin de "tipificar como delito conducta constitutiva de acecho que induzca temor en el ánimo de una persona prudente y razonable de sufrir algún daño físico en su persona, sus bienes o en la persona de un

miembro de su familia, establecer el procedimiento para órdenes de protección, establecer penalidades, y otros fines". Véase, Exposición de Motivos de la Ley núm. 284-1999.

En lo aquí pertinente, el Artículo 3(a) de la Ley núm. 284-1999, 33 LPRA sec. 4013, define el acecho como:

> "[u]na conducta mediante la cual se ejerce una vigilancia sobre determinada persona; se envían comunicaciones verbales o escritas no deseadas a una determinada persona, se realizan amenazas escritas, verbales o implícitas a determinada persona, se efectúan actos de vandalismo dirigidos a determinada persona, se hostiga repetidamente mediante palabras, gestos o acciones dirigidas a intimidar, amenazar o perseguir a la víctima o a miembros de su familia."

Así pues, vemos que el estatuto describe la conducta delictiva como aquella en donde toda persona que intencionalmente manifieste un patrón constante o repetitivo de conducta de acecho dirigido a intimidar a una determinada persona a los efectos de que ella, o cualquier miembro de su familia podría sufrir daños, en su persona o en sus bienes; o que mantenga dicho patrón de conducta a sabiendas de que determinada persona razonablemente podría sentirse intimidada. Artículo 4, *supra*, 33 LPRA sec. 4014(a).

A su vez, "intimidar" se refiere a "toda acción o palabra que, manifestada repetidamente, infunda temor en el ánimo de una persona prudente y razonable a los efectos de que ella, o cualquier miembro de su familia, pueda sufrir daños, en su persona o en sus bienes, y/o ejercer presión moral sobre el ánimo de ésta para llevar a cabo un acto contrario a su voluntad." Artículo 3, *supra*, 33 LPRA sec. 4013 (f).

Ahora bien, apuntalamos que para que una actuación sea tipificada como acecho, la misma tiene que envolver un patrón de conducta persistente. Al respecto, la antedicha ley establece que un patrón de conducta persistente "[s]ignifica realizar en dos (2) o más ocasiones actos que evidencian el propósito intencional de

intimidar a determinada persona o a miembros de su familia." *Íd.,* inciso (b). Es decir, para que la alegada conducta sea considerada acecho es imprescindible un patrón persistente. O sea que, en dos o más ocasiones, surjan actos que evidencien el propósito intencional de intimidar a determinada persona o su familia.

Destacamos, además, que el periodo de tiempo de los actos que componen el patrón de conducta fue eliminado de la Ley núm. 284-1999 mediante enmienda por la Ley núm. 394-2000. En esta enmienda se suprimió aquella parte de la Ley núm. 284-1999 que establecía que "el patrón de conducta constante debe ser en forma ininterrumpida durante un periodo de tiempo que no sea menor de quince minutos." Ello, al entender que el elemento del tiempo no necesariamente forma parte de la conducta que debe ser tipificada como acecho. Véase, Exposición de Motivos Ley núm. 394-2000.

Por su parte, la Ley núm. 284-1999 establece un mecanismo de órdenes protectoras contra toda persona que intencionalmente manifieste un patrón de conducta persistente de acecho dirigido a intimidar a otra persona. Así, el Artículo 5 permite a aquellas personas que sufran las consecuencias de una conducta por acecho, acudir a los tribunales y solicitar una orden de protección. 33 LPRA sec. 4015.

Los tribunales podrán emitir órdenes de protección cuando determinen la existencia de motivos suficientes para creer que se ha configurado la conducta de acecho. *Íd.,* inciso (c). Entre otras condiciones, el foro podrá ordenar a la parte contra quien se solicite la orden de protección que se abstenga de molestar, hostigar, perseguir, intimidar, amenazar, o realizar cualquier otra conducta constitutiva de acecho. *Íd.,* inciso (c)(1).

**III.**

De ordinario, la petición de orden de protección es de tramitación sumaria y se sostiene en la sana discreción del juez que la considera. Esa discreción es esencial para adelantar el propósito legislativo y la política judicial que procura cumplir la Ley Contra el Acecho, *supra*. La deferencia al juicio y a la discreción del foro primario se fundamenta en que ese foro está en mejor posición para dirimir controversias y asuntos basados en la apreciación de la prueba vertida ante sí.

Así pues, luego de escuchada la vista, el testimonio directo del señor Aponte Castro; así como el contrainterrogatorio, y analizados los argumentos del presente recurso, resolvemos que el peticionario no nos ha persuadido de intervenir con el discernimiento del TPI al expedir la orden y al adjudicar credibilidad. Destacamos que, a preguntas del TPI, la representación legal del señor Toro Curet expresó que este no iba a declarar y que se negaban todos los hechos. Por ende, el caso quedó sometido con el testimonio del recurrido, el que, a nuestro entender, resultó suficiente a tenor con los requerimientos dispuestos en el estatuto en cuestión.

En fin, no surge del recurso ante nuestra consideración que el TPI haya actuado contrario a derecho o en violación al debido proceso de ley. Por consiguiente, nos corresponde abstenernos de intervenir con el dictamen recurrido el cual dispuso adecuadamente de los asuntos.

**IV.**

Por los fundamentos antes expuestos se deniega la expedición del auto de *certiorari*.

Notifíquese inmediatamente.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones